UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-22633-Civ-JORDAN
MAGISTRATE JUDGE P.A. WHITE

WILDO RIVERA,                              :

    Petitioner,                        :

v.                                         :          REPORT OF
                                                      MAGISTRATE JUDGE
WALTER A. MCNEIL,[1]                       :

    Respondent.                        :
_____

## I. Introduction

Wildo Rivera, a state prisoner confined at Hendry Correctional Institution, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions entered in Miami-Dade County Circuit Court case number F98-13788.

## II. Procedural History

Rivera was charged with second-degree murder (Count I), kidnaping with a weapon (Count II), burglary with assault or battery therein while armed (Count III), aggravated battery with a deadly weapon (Count IV), and escape (Count V).

Victor Canales testified that he met victim Maria Nieves about a week before her death. (T. 322). Canales' friend from church introduced Nieves, a prospective church member, to Canales and his wife and children. (T. 323). Several days later, Canales saw Maria

---

[1] Walter A. McNeil has replaced James R. McDonough as the Secretary of the Department of Corrections, and is now the proper respondent in this proceeding. McNeil should therefore be "automatically" substituted as a party. Fla. R. Civ. P. 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

1

when he took the mutual friend to the airport. He and his wife drove her to church a few days later. (T. 329-30, 398). The following afternoon, Nieves called Canales and suggested they go to a movie with another female friend, Terry, who Canales had not met before.[2] (T. 333-34). The three saw the movie, got coffee, and visited another friend. (T. 335-36). Canales bought both women flowers. (T. 336).

Canales drove Nieves back to her apartment building that night and parked the car as he and Nieves were saying goodbye. Suddenly the passenger door opened and Rivera yanked Nieves out of the car by her hair. (T. 339-40). Rivera leaned into the passenger door, knelt on the seat and thrust an Exacto knife at Canales, who received cuts to his face and left hand as he struggled to remove the seatbelt with his right hand. (T. 341-44). The blade eventually became detached from the handle. (T. 342). Nieves told Rivera to stop because it wasn't what he thought; that Canales was "Brother Victor" who had taken her to church the day before. (T. 345).

Rivera turned his attention to Maria and stepped out of the car. He pulled a large kitchen knife from is waistband and removed it from a cardboard sheath. He called Maria a "whore" and drove the knife into Nieves' abdomen. (T. 346-47). Maria fell to the ground. (T. 350). Rivera stepped around the back of Canales' car, still carrying the knife, toward the driver's side where Canales was struggling with the seatbelt. (T. 351-52). Maria said "Help, help, help him, help him. He's going to kill him." (T. 351). Canales put the car into reverse but the car stalled. (T. 351). An unidentified bystander told Rivera to stop, pulled a gun, and fired two rounds into the air. (T. 353). Canales finally got out of his car and

---

[2] Canales refers to the friend as both "Terry" and "Veronica" (T. 334, 400).

stood by the hood as Rivera walked back around the car and said to Maria "it is you who I'm going to kill." (T. 354). He grabbed her hair in one hand, held the knife in the other, and walked her across the street. When they reached the apartment gate he held the knife to Maria's neck and made her unlock it. (T.  357, 379). Canales called 911 from his cell phone while standing by the hood of his car. (T. 355).

The prosecutor attempted to introduce a written transcript translating Canales' 911 tape into English. Defense counsel objected because the transcript had not been prepared by a court certified interpreter. (T. 360). Defense counsel argued the transcript should not be introduced unless the person who prepared it testified to their proficiency in English and Spanish and ability to accurately translation. (T. 361). The court sustained the objection and instructed the official court interpreter to orally translate the 911 tape as it was played in open court. (T. 362). The court refused to permit the interpreter to refer to the written transcript because it was inconsistent with the interpreter's understanding of the tape:

> THE COURT: ... where the victim, Mr. Canales, says she was stabbed, being stabbed in the leg, she says, 'I don't interpret that.' Then there is a section where it's unintelligible. He says, 'It is in the house.' So again, I don't want to have him relying on this translation here because it is not what he is going to be interpreting from the tape.

(T. 371).

Defense counsel offered to withdraw the objection and allow the transcript to be used. (T. 371). The interpreter translated the

3

tape as it was played for the jury as follows:

THE OPERATOR: Miami Police.

THE CALLER: There's an emergency. They're killing a woman at 1250 Northwest 6th Street.

...

THE OPERATOR: They're killing a woman or a woman is being killed? Pay attention to me for a moment. What is happening? How are they killing her?

THE CALLER: They are killing her or she is being killed with a knife (unintelligible).

THE OPERATOR: Is it a man?

THE CALLER: It is a man.

THE OPERATOR: Is he white or black?

THE CALLER: He's white.

THE OPERATOR: What kind of clothes does he have on?

THE CALLER: He is right here. He is inside. He is insider her room.

THE OPERATOR: Do they know each other?

THE CALLER: Yes. That's her husband. But he's going to stab her now.

THE OPERATOR: All right. What kind of clothes is he wearing?

THE CALLER: White pants and a pink shirt.

THE OPERATOR: Hold on a minute, sir. Do not hang up.

THE CALLER: Hurry up, please.

THE OPERATOR: They are on their way already.

THE CALLER: Okay.

THE OPERATOR: Pay attention to me, sir. Okay. Okay. Is it her husband?

THE CALLER: It is her husband.

THE OPERATOR: What's your name?

THE CALLER: Victor M. Canales.

THE OPERATOR: Victor. Okay. We are already on our way over.

...

THE OPERATOR: Okay. He's got a pink T-shirt on? You said pink.

THE CALLER: Pink T-shirt is on. The police is here already.

THE OPERATOR: I know but does he have a pink T-shirt on? Does she have a pink T-shirt on?

THE CALLER: Yeah, he has a pink shirt on and white pants.

THE OPERATOR: Okay. We are on our way.

THE CALLER: They're here already. They're inside the second floor. He's armed with a knife. He wants to knife me. Do you want to -- is he outside now.

THE OPERATOR: Who is inside?

THE CALLER: He wants to knife her.

THE OPERATOR: Where did he knife her?

THE CALLER: Right there on the throat. He put the knife to the throat.

THE OPERATOR: Okay. They are on their way.

THE CALLER: They are here. Okay. Thank you.

(T. 375-78).

When police arrived, Canales directed them towards the apartment building and they followed a trail of blood from the parking lot to the victim's second-story apartment. (T. 267, 429). Rivera answered the door shirtless. (T. 270, 430). The victim was lying on the floor. (T. 270). When police asked her what happened, Rivera told her "cio"[3] in an aggressive tone. (T. 432-33). She did

---

[3] The officer explained "cio" is short for "silencio." (T. 432).

not say anything except to ask for a glass of water. (T. 433).

Officers ordered Rivera out of the apartment while they tended to the victim then handcuffed him and placed him in a patrol car. (T. 277-78, 280). They re-secured him after finding that he had gotten the handcuffs in front of him and squeezed partially through the car's partition. (T. 285, 435). At the station they placed him in an interview room. After hearing a commotion they discovered he had climbed onto a table and was trying to wedge himself into the dropped ceiling. (T. 460). He fell and was injured. (T. 460).

Officers found a seven-inch kitchen knife inside the apartment. (T. 273). Downstairs, they found an Exacto knife blade and homemade handle wrapped with rubber bands and red photography tape. (T. 536-37, 562). Canales' blood was on the hood of his car where he stood to call 911. (T. 492, 537). Two shell casings were located where Canales saw the bystander shoot into the air. (T. 537). A piece of cardboard rolled up with rubber bands was found in front of Canales' car. (T. 546). More cardboard of the same size and thickness was inside the apartment along with another Exacto knife. (T. 559-61). A trail of the victim's blood led from the parking lot to her upstairs apartment. (T. 492, 554-56). The victim's blood was also on the kitchen knife and a bloody green shirt recovered from the apartment's bathroom. (T. 491, 560, 574).

The victim died at the hospital from a single stab wound to the abdomen that penetrated all the way to her spine. (T. 609). Its size and shape were consistent with the seven-inch kitchen knife recovered from the apartment. (T. 273, 610-12).

Counsel cross-examined Canales about several details of his testimony. He admitted he might have been mistaken about his

testimony that Rivera dragged the victim by her hair:

> Q. Now, when you called the police on the 911 tape, did you tell them that someone was being stabbed in the leg?
> A. She was being knifed. And I saw that he was introducing the knife in the stomach. I didn't say the leg.
> ...
> Q. Sir, you called the police and when the 911 tape was made, you did not tell the police on the tape that the victim was being stabbed in the leg?
> A. No.

(T. 408).

Counsel also cross-examined Canales about his marriage. Canales denied he and the victim were romantically involved:

> Q. ... Did you find Maria Nieves attractive, physically attractive?
> MS. ADAMS: Objection. Relevance, Your Honor.
> THE COURT: I'll permit the question. Go ahead.
> A. As a person I thought she had a beautiful personality.
> BY MR. JOFFE:
> Q. So you liked her.
> A. I'm married. I'm not looking for that. I'm a street preacher.
> ...
> Q. And do you tell your wife you're taking a single woman to the movie?
> A. No.
> Q. And you had been married for how long at this point, sir?

A. Must have been about four years.

...

Q. [And afterwards you went to buy coffee] with the two young ladies?

A. Yes. After we got out of the movies we went over there.

Q. And you buy flowers for Maria. Is that correct?

A. Yes, and Veronica, $2.50 each.

Q. All right. Was your wife present when you bought those flowers?

A. No. When we went to the movies we got out of the movies. I go out of there. And my wife was not there.

Q. Did you think that was a date to the movie, when you talked to Ms. Nieves?

A. No.

(T. 394, 400).

Counsel attempted to impeach Canales' claim that Rivera was the aggressor by exploring Canales' history. Specifically, counsel asked whether Canales had been in fights before, had experience defending himself, had ever been in a fist fight, or had ever been approached by someone wielding a knife or sharp instrument (T. 405-06). The prosecutor's objection to each of these questions was sustained. (T. 405-06). Canales denied carrying a knife or having a knife in his car that night. (T. 406). Counsel also asked Canales why he left his native Nicaragua. The prosecutor objected to counsel's attempts to explore Canales' history as irrelevant. The court sustained the objections. (T. 387, 406).

Defense counsel informed the trial court that Rivera wanted to call several police officers at trial. (T. 503-04). Counsel reviewed the officers' depositions with Rivera and discussed them

with him. Counsel explained that, although certain portions of the depositions might be helpful, there are other portions that "are fully consistent with other witnesses in this theory in the State's case that I believe would be more harmful to him rather than beneficial." (T. 504).

Rivera was adamant about calling witness Omar Delpico at trial. (T. 505). Counsel noted Delpico's deposition included statements that "theoretically could be construed as exculpatory evidence as to my client." (T. 506). An investigator attempted to locate Delpico at two addresses but was unable to locate him. (T. 515). Another State witness had not seen Delpico for four years. (T. 645). The prosecutor had also been out of contact with Delpico for four years. (T. 516, 645).

Sergeant Julio Pino was also unavailable for trial, however, the parties reached a stipulation about Pino's testimony. The court instructed the jury:

> THE COURT: ... If Sergeant Pino were called to testify in this case, he would testify to the following two matters: One, he saw Wildo Rivera, the defendant, in a police car at the scene of 1250 Southwest 6th Street on the date in question. Two, when he saw Wildo Rivera, the defendant, he noted that the defendant was very upset, crying, and basically kept repeating in Spanish over and over numerous times, "How's my wife? How's my wife?"

(T. 657-58).

Rivera testified that he lived with the victim and planned to marry her. (T. 659). He worked as a technician and part-time wedding photographer. (T. 678). On the night in question he was

wearing a white shirt and khaki pants. (T. 664). He saw a vehicle stop close to his apartment. A man was moving violently in the car as though arguing. (T. 662). One of the car doors opened and a woman was pushed out. (T. 662). He realized it was Maria. (T. 663). A man, who Rivera identified as Canales, also got out of the car. (T. 664). Rivera got between Canales and Maria and Canales put his hand behind him. (T. 666). Maria got between Canales and Rivera and Canales stabbed her. (T. 666). Maria asked Rivera for help and he assisted her to the apartment. (T. 666). She had the knife in her hand and fell as she tried to sit down. (T. 667). He tried to call 911 as police knocked on the door. (T. 667). He denied saying "cio" to Maria. (T. 669). He did not intend to escape from the patrol car or the interview room but was trying to get someone's attention to find out about Maria's condition. (T. 671, 675).

Defense counsel argued in closing that Canales accidentally stabbed the victim. Counsel argued Canales had known the victim for longer than he admitted at trial and was having an affair with her. (T. 735). Counsel argued the two went on a movie date that ended with Canales and the victim fighting outside Canales' car. When Rivera approached, Canales allegedly confronted him with a knife and accidentally stabbed the victim. (T. 739).

The jury found Rivera guilty of second-degree murder with a weapon (Count I), attempted burglary with assault or battery while armed (Count III), and aggravated battery with a deadly weapon (Count IV), and acquitted him of kidnaping (Count II) and escape (Count V).[4] [DE# 11, Ex. B]. The trial court imposed concurrent

---

[4] This conviction resulted from Rivera's second trial on these offenses. His first conviction and its reversal are irrelevant to these proceedings. See Rivera v. State, 807 So. 2d 721 (Fla. 3d DCA 2002) (3D00-3178) (reversing and remanding for new trial); Rivera v. State, 864 So. 2d 422 (Fla. 3d DCA 2003) (3D03-3038) (granting belated appeal).

sentences of life for murder and thirty years for attempted burglary and battery. [DE# 11, Ex. C].

On appeal Rivera argued prosecutorial misconduct, including inflammatory argument and improper cross-examination, deprived him a fair trial. [DE# 11, Ex. D]. The Third District Court of Appeal affirmed on September 28, 2005. Rivera v. State, 912 So. 2d 1237 (Fla. 3d DCA 2005) (3D04-60).[5]

Rivera filed a Motion to Correct Illegal Sentence on June 29, 2006, in which he alleges the trial court failed to follow the sentencing guidelines.[6] [DE# 1, attachment]. The trial court denied relief, but the Third District reversed and remanded because the allegations were facially sufficient. Rivera v. State, 949 So. 2d 1090 (Fla. 3d DCA 2007) (3D06-2759). On remand, the trial court again denied relief on May 15, 2007. [DE# 11, Ex. O]. Rivera filed a notice of appeal of the May 15, 2007, order on June 5, 2007. [DE# 1, attachment]. The notice of appeal was not transmitted to the Third District as will be discussed more fully below.

On December 15, 2006, Rivera filed a 3.850 motion to vacate, set aside or correct his sentence. [DE# 11, Ex. G]. Rivera filed an amended motion on April 2, 2007. [DE# 11, Ex. H]. He argued trial

---

[5] The Court takes judicial notice of the records maintained by the clerks for the Third District Court of Appeal and the Circuit Court for the Eleventh Judicial Circuit of Florida relating to Wildo Rivera, located at http://199.242.69.70/pls/ds/ds_docket_search?pscourt=3 and at http://www2.miami-dadeclerk.com/CJIS/CaseSearch.aspx. See Fed. R. Ev. 201.

[6] Rivera certifies he placed it in the prison's mail system on June 29, 2006. However, he alleges that the original motion was lost and that he refiled it on December 18, 2006. The motion appears on the trial court's docket on October 19, 2006. The Eleventh Circuit recognizes the "mailbox" rule in connection with a prisoner's petition for writ of habeas corpus. Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). Therefore, the Court will give Rivera the benefit of the June 29, 2006, filing date.

counsel rendered ineffective assistance for the following reasons:(1) permitting the state to play for the jury an edited, tampered with, version of the 911 emergency call, in violation of the rule of completeness codified in Florida rule of evidence 90.108; (2) failing to impeach state's witness, Victor Canales, with a prior inconsistent statement; (3) failing to produce Omar Delpico at trial when he knew the witness had critical information and would have impeached state witness Canales; (4) failing to impeach Canales with prior inconsistent statement made to law enforcement; (5) cumulative errors; (6) failing to impeach Canales with a prior criminal propensity for violence; (7) failing to impeach Calanes with a prior inconsistent statement; (8) failing to prove DNA evidence proves Canales lied at trial; (9) failing to produce Officer Luis Molina at trial when he knew Molina was a critical witness and could have impeached Canales; (10) failing to make the state fulfill its burden of proof, which would have indicated petitioner's actual innocence. The trial court denied relief on August 3, 2007. [DE# 11, Ex. J].

Rivera filed a notice of appeal of the August 3, 2007, order denying his 3.850 motion on September 11, 2007. [DE# 1, Attachment to original habeas petition]. As previously noted, he had also filed a notice of appeal of the May 15, 2007, order denying his 3.800 motion on June 5, 2007. The trial court's docket sheet indicates that Rivera filed two notices of appeal from 3.850 orders; one on August 22, 2007, and a second on September 20, 2007. The trial court credited the first notice of appeal to the August 3, 2007 order, and transmitted it to the Third District. The Third District affirmed the trial court's order denying the December 15, 2006, 3.850 motion. Rivera v. State, 970 So. 2d 840 (Fla. 3d DCA 2007) (3D07-2278). The mandate issued November 21, 2007. The trial court discarded the second notice of appeal as a duplicate. See

(September 20, 2007, docket sheet entry: "2ND NOA DUPLICATE").[7]

Rivera filed several other motions that the trial court denied. See, e.g., [DE# 11, Ex. L] (October 11, 2006, motion to correct illegal sentence denied October 20, 2006); (October 25, 2006, motion to correct illegal sentence denied November 8, 2006); (December 26, 2006, motion to correct illegal sentence denied January 26, 2007); (October 17, 2007, motion denied November 27, 2007). However, these motions were filed while other motions were pending and Rivera did not seek appellate review of their denial. Therefore, these motions are not material to tolling or exhaustion and warrant no further discussion.

Rivera first sought habeas corpus relief in this Court on October 1, 2007. [DE# 1](grounds 1-10); see [DE# 12] (amended petition). The amended petition presently before the Court was filed on May 7, 2008. [DE# 16]. Rivera argues counsel was ineffective for failing to: (1) object when the prosecutor played jury an edited translated version of the 911 emergency tape; (2) impeach Victor Canales' trial testimony that the victim was stabbed in the stomach with his prior 911 call, in which he stated she was being stabbed in the leg and throat; (3) call Omar Delpico at trial to impeach Canales' testimony that Rivera grabbed the victim by her hair; (4) impeach Canales' testimony that he brought the victim from the movies rather than from church;(5) impeach Canales with his propensity for violence and guerrilla training to show Canales actually stabbed the victim; (6) impeach Canales' testimony that he

---

[7] The Respondent has not addressed whether one of the notices of appeal should have been credited to the order denying Rivera's Rule 3.800 motion. The Court declines to order the Respondent to address the issue at this time because it does not appear to have any bearing on this case. Rivera's present habeas petition does not raise the issue asserted in his Rule 3.800 motion and he does allege the instant stay is required to exhaust that claim.

is a married street preacher who was not romantically interested in the victim, with prior inconsistent statements that he had kissed another woman (Terry); (7) demonstrate Canales lied that he was wearing a pink shirt and Rivera stabbed him inside Canales' car where no pink shirt was located, there was no blood found inside Canales' car, Canales' blood was found on the hood of his car, and neither blood nor fingerprints from Rivera were found; (8) call Officer Luis Molina to testify Canales reported having dropped off the victim from bible study to impeach Canales' testimony they had gone to the movies; (9) make the State fulfill its burden of proof which would have indicated petitioner's actual innocence; (11) devote adequate time to the case; (12) impeach Officer Alberto Garcia and Detective Alfredo Alvarez's testimony that the defendant came to the door with nothing in his hands, with Officer Nardello's testimony that Rivera was not wearing a shirt and explained a person in a pink shirt stabbed the victim downstairs. He alleges (10) counsel's ineffectiveness cumulatively deprived him a fair trial. Rivera also claims the following trial errors occurred: (13) inconsistent statements made by Canales are demonstrably false and contradictory; and (14) the trial judge did not allow the jury to hear important evidence.

On May 7, 2009, Rivera filed a Petition for Stay and Abeyance of this habeas action. [DE# 22]. He alleges good cause exists to stay the instant proceedings so he can exhaust his remedies by seeking collateral relief in State court.

The Respondent asserts the motion for stay should be denied because several claims are already exhausted and the remaining claims are procedurally barred so exhaustion would be futile. [DE# 18]. The Respondent has addressed the exhausted claims and argues they should be denied on the merits.

### III. Statute of Limitations

The Respondent correctly concedes Rivera's petition for writ of habeas corpus was timely filed.

### IV. Exhaustion

An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. § 2254(b), (c). A claim must be presented to the highest court of the state to satisfy the exhaustion requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5th Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir. 1982). A petitioner is required to present his claims to the state courts such that the courts have the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270, 275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. It may also be accomplished by seeking post-conviction relief to the Florida Rules of Criminal Procedure, and appealing the denial of such a motion. Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979).

Of the fourteen grounds Petitioner raises in his present habeas petition, he has exhausted claims one through ten. He raised these claims in his state court motion for post-conviction relief and appealed the trial court's denial of that motion. [DE# 11, Ex. G, H]; Rivera v. State, 970 So. 2d at 840. However, Rivera has never presented grounds eleven through fourteen in State court. Accordingly, these grounds are unexhausted and Rivera's habeas petition is a mixed petition of exhausted and unexhausted claims.

When a federal habeas petition raises a claim that has not been exhausted in state court, the district court ordinarily must

dismiss the petition, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." <u>Kelley v. Sec'y, Dep't of Corr.</u>, 377 F.3d 1317, 1351 (11th Cir. 2004). In extraordinary cases, the district court has discretion to grant a stay to allow the petitioner to exhaust the unexhausted claim. <u>Rhines v. Weber</u>, 544 U.S. 269, 277-78 (2005) (stay and abeyance is available in limited circumstances, only if (1) the petitioner had "good cause" for failing to exhaust the claims in state court, (2) the unexhausted claims are "potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."). However, "when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." <u>Kelley</u>, 377 F.3d at 1351.

A stay permitting Rivera to exhaust claims eleven through fourteen is not warranted because claims would be procedurally barred if Rivera presented them in State court. Rivera has already pursued a direct appeal. Issues which could have been raised on direct appeal cannot be raised in a later motion for post-conviction relief. <u>Kennedy v. State</u>, 547 So. 2d 912 (Fla. 1989). Rivera has also filed a Rule 3.850 motion which the trial court denied and the appellate court affirmed. Any additional 3.850 would be barred as a successive absent an exception that is not evident in the instant case. <u>See</u> Fla. R. Crim. P. 3.850(f); <u>see</u> <u>also</u> <u>Moore v. State</u>, 820 So. 2d 199, 205 (Fla. 2002)(a second or successive motion for post-conviction relief can be denied as an abuse of process if there is no reason for failing to raise the issues in

the previous motion).

Moreover, a Rule 3.850 motion would be time-barred if Rivera sought relief now in State court. Rivera's conviction and sentence became final for purposes of Florida law on October 14, 2005, when the Third District issued its mandate on direct appeal. See Beaty v. State, 701 So. 2d 856 (Fla. 1997). Rivera had two years from that date, until October 14, 2007, to seek collateral relief. See Fla. R. Crim. P. 3.850; Fla. R. App. P. 9.141. Any motion for post conviction relief would now be time-barred.

Because there are no procedural avenues remaining available which would allow Rivera to return to state court and exhaust claims ten through fourteen, they are procedurally defaulted from federal review. See Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999)(where state prisoner failed to raise a federal claim in state post-conviction proceedings, and it is obvious that such unexhausted claim would now be procedurally barred due, federal habeas court may foreclose petitioner's filing in state court); Collier v. Jones, 910 F.2d 770, 773 (11th Cir. 1990)(where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are procedurally barred in federal court as well).

A petitioner can avoid procedural default by demonstrating (1) objective cause for failing to properly raise the claims before the state courts and (2) actual prejudice resulting from the errors complained of. See Dretke v. Haley, 541 U.S. 386 (2004); see also United States v. Frady, 456 U.S. 152, 168 (1982); Wainwright v. Sykes, 433 U.S. 72 (1977). Rivera has not attempted to demonstrate cause and prejudice. Therefore, he cannot overcome the procedural bar. See O'Sullivan v. Boerckel, 526 U.S. at 848-49; Coleman v.

Thompson, 501 U.S. 722, 750-51 (1991); United States v. Frady, 456 U.S. 152, 168 (1982); Sykes, 433 U.S. at 72. Nor has Rivera alleged factual innocence.[8] See House v. Bell, 547 U.S. at 538 (holding actual innocence requires substantive review only in extraordinary cases); see also Dretke, 541 U.S. at 392-93.

Because unexhausted claims ten through fourteen may not form the basis of federal habeas relief, it is not appropriate to stay this federal habeas corpus proceeding. See Rhines v. Weber, 544 U.S. at 269. The Court finds it expeditious to address the merits of Rivera's exhausted claims one through ten at this time.

### V. Standard of Review

A state prisoner may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); see Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Fugate v. Head, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme

---

[8] Ground nine of Rivera's habeas petition alleges trial counsel's ineffectiveness failed to reveal "the actual innocence of the defendant," however, the substance of the claim is an attack on the sufficiency of the evidence rather than a true claim of factual innocence. See Murray v. Carrier, 477 U.S. 478, 496 (1986) ("actual innocence means factual innocence, not mere legal insufficiency.").

Court case law, or if the State court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Hall v. Head, 310 F.3d 683, 690 (11th Cir. 2002) (citing Williams, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. See Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y, Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed. Id. Further, a federal court must presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

Some of Rivera's claims seek habeas relief based on ineffective assistance of counsel. The United States Supreme Court clearly established the law governing ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced him. Id. at 690. As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. Id. The judiciary's scrutiny of counsel's performance is highly deferential. Id. at 689.

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. <u>Id.</u> at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. <u>Id.</u>

A defendant must satisfy both the deficiency and prejudice prongs set forth in <u>Strickland</u> to obtain relief on an ineffective assistance of counsel claim. Failure to establish either prong is fatal and makes it unnecessary to consider the other. <u>Strickland</u>, 466 U.S. at 697.

Combining AEDPA's habeas standard and <u>Strickland's</u> two-pronged test provides the relevant inquiry in this case. To obtain habeas relief, Rivera must show the state court "applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002).

## VI. Discussion

Rivera's habeas petition should be denied because the State courts' rejection of these claims was not contrary to or unreasonable application of clearly established federal law.

(1) <u>911 Call Translation</u>

Rivera argues defense counsel should have objected when the prosecutor presented an edited translation of Canales' 911 emergency call. He contends the translation omits statements the victim was stabbed in the leg and neck, which he argues is inconsistent with Canales' trial testimony that she was stabbed in the stomach.

Under Florida law, "an interpreter must be qualified, sworn and impartial." <u>Obano v. State</u>, 988 So. 2d 87, 88 (Fla. 4th DCA 2008); <u>see</u> § 90.606(3), Fla. Stat. ("An interpreter shall take an oath that he or she will make a true interpretation of the questions asked and the answers given...."). Interpreters are considered expert witnesses who must be qualified and whose specialized knowledge assists the trier of fact to understand the evidence. § 90.606, Fla. Stat., Law Revision Council Note, 1976; <u>see</u> § 90.702, Fla. Stat. The Florida Rules for Certification and Regulation of Court Interpreters require official interpreters to pass written and oral proficiency examinations and take an oath to uphold the interpreters' Code of Professional Conduct. Fla. R. Interpreters 14.200. An official interpreter is required to "render a complete and accurate interpretation or sight translation, without altering, omitting, summarizing, or adding anything to what is stated or written, and without explanation." Fla. R. Interpreters 14.310. Permitting an individual who has not taken the interpreters' oath to provide a translation can constitute reversible error. <u>See</u> <u>Ortega v. State</u>, 721 So. 2d 350 (Fla. 2d DCA 1998) (reversible error where law enforcement officer translated defendant's videotaped Spanish statements made to another officer).

Rivera complains the official interpreter's in-court translation improperly "edited" the written transcript by omitting Canales' alleged statement the victim was stabbed in the leg and neck. However, defense counsel correctly objected to the written transcript because its accuracy was unknown. The trial court sustained the objection. Further, the court did not allow the official interpreter to refer to the transcript because it varied from the official interpreter's own translation of the tape. Defense counsel apparently realized the transcript might provide a more favorable version of the tape than the official interpreter

and offered to withdraw the objection. No deficient performance is apparent because counsel's initial objection was legally correct and the later offer to withdraw the objection could be considered sound trial strategy. See generally Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection); Fotopoulos v. Sec'y, Dep't of Corr., 516 F.3d 1229 (11th Cir. 2008) (reasonable strategic decisions do not constitute deficient performance).

(2) Impeachment: Victim Stabbed in the Leg

Rivera argues counsel failed to impeach Canales' trial testimony that he told police the victim was being stabbed in the stomach,[9] with a statement on the 911 tape that she was being stabbed in the leg and throat.

Under Florida law, a party may attack the credibility of a witness by:

> (1) Introducing statements of the witness which are inconsistent with the witness's present testimony.
> (2) Showing that the witness is biased.
> (3) Attacking the character of the witness in accordance with the provisions of s. 90.609 or s. 90.610.
> (4) Showing a defect of capacity, ability, or opportunity in the witness to observe, remember, or recount the matters about which the witness testified.
> (5) Proof by other witnesses that material facts are not as testified to by the witness being impeached.

§ 90.608, Fla. Stat.

---

[9] According to Rivera's petition, Canales testified consistently at Rivera's first trial in 2000.

In addition, a party may impeach the credibility of a witness through reputation evidence, except "[t]he evidence may refer only to character relating to truthfulness." § 90.609(1), Fla. Stat. Steinhorst v. State, 412 So. 2d 332 (Fla. 1982) (it is improper to generally attack a witness' character). Extrinsic evidence of a witness' prior inconsistent statement is admissible "if a witness denies making or does not distinctly admit making the prior inconsistent statement...." § 90.614(2), Fla. Stat. However, the inconsistent statement must address a material matter. Myers v. State, 31 So. 275, 278 (1901). A trial court does not err in excluding extrinsic evidence that contradicts a witness on an irrelevant or collateral matter. Caruso v. State, 645 So. 2d 389, 394 (Fla. 1994). A strategic decision by counsel, such as how or whether to cross-examine a witness, constitutes ineffective assistance "only if it was so patently unreasonable that no competent attorney would have chosen it." Kelly v. United States, 820 F.2d 1173, 1176 (11th Cir. 1987) (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).

Counsel is not ineffective for failing to impeach Canales with a prior inconsistent statement because Canales' trial testimony and the 911 tape are consistent. According to the official interpreter, Canales told the 911 operator the victim's husband was killing her with a knife, and he held a knife to her throat. The interpreter did not hear any statement that the victim was stabbed in the leg. This translation is consistent with Canales' testimony that Rivera stabbed the victim's stomach in the parking lot, dragged her to her apartment building, held a knife to her throat while she unlocked a gate, then forced her upstairs to her apartment.

Further, counsel did cross-examine Canales about his testimony even though no inconsistency was apparent. Counsel pressed Canales

23

about whether he had actually seen Rivera pull the victim's hair and Canales admitted he had not specifically seen it occur. Accordingly, counsel successfully impeached Canales on this point, contrary to Rivera's present claim.

(3) Failure to Call Omar Delpico

Rivera argues counsel failed to call Omar Delpico to testify that Rivera grabbed the victim by the arm to force her across the street to her apartment building. He contends this would have impeached Canales' testimony that Rivera grabbed the victim by the hair to drag her out of the car and into her apartment.

Counsel is required to conduct a reasonable investigation when preparing for trial. Strickland, 466 U.S. at 690; Williams v. Head, 185 F.3d 1223, 1236-37 (11th Cir. 1999)(counsel has no absolute duty to investigate a particular line of defense or to conduct a thorough investigation before developing a strategy). A petitioner must show there is a reasonable likelihood that an ordinarily competent attorney conducting a reasonable investigation would have located the witness by using a reasonably diligent effort. Elledge v. Dugger, 823 F.2d 1439, 1446-48, vacated on other grounds, 833 F.2d 250 (11th Cir. 1987). Counsel cannot be deemed deficient for failing to call an unavailable witness. Elledge, 823 F.2d at 1446-48. Claims concerning uncalled witnesses "impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." United States v. Guerra, 628 F.2d 410, 413 (5th Cir. 1980); West v. Sec'y, Dep't of Corr., 151 Fed. Appx. 820 (11th Cir. 2005). "A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative." Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1324 n.7 (11th

24

Cir. 2002); see Parker v. Allen, 565 F.3d 1258 (11th Cir. 2009) (same).

Counsel attempted to call Delpico at trial but investigators were unable to locate him after exhausting Delpico's known addresses. Investigators confirmed with another witness and the prosecutor that his whereabouts had been unknown for approximately four years. Counsel's efforts to locate Delpico, although tardy, appear to be reasonable. Counsel was not deficient for failing to call Delpico as a witness because he was unavailable. Elledge, 823 F.2d at 1446-48.

Further, Delpico's absence at trial did not prejudice Rivera because any impeachment would have been cumulative. Counsel successfully impeached Canales about whether he actually saw Rivera pull the victim by her hair. Canales admitted he did not know whether Rivera pulled the victim out of the car by her arm or hair. (T. 403-04) ("I don't know if she was being grabbed by the hair. All I know, she was pulled outside;" "Q. The question is, did you see someone pull her out of the car by her hair. Answer yes or no. A. No, No. I didn't see it."). Counsel highlighted this uncertainty in closing argument and submitted that Canales was an unreliable witness. (T. 745). Moreover, an inconsistency on this minor detail would not have probably affected the outcome of trial considering the overwhelming evidence of Rivera's guilt.

(4) Impeachment: Victim Arrived from Church

Rivera argues counsel failed to impeach Canales' trial testimony that he had just brought the victim from the movies when she was attacked, with statements to officers Alvarez, Molina and Aguero that he had brought her from church.

Counsel was not ineffective for failing to elicit testimony about Canales' allegedly inconsistent statements to police because it was inadmissible. Counsel asked Alvarez on cross-examination whether Canales told him he had just brought the victim back from church when she was attacked. The court sustained the State's hearsay objection. (T. 441). As set forth in claim (2), supra, extrinsic evidence on collateral matters is inadmissible. Here, whether the victim and Canales has just returned from the movies or from church was immaterial to whether Rivera stabbed the victim and the trial court properly excluded it. See § 90.614(2), Fla. Stat.; Caruso, 645 So. 2d at 394. Officers Molina and Aguero did not testify at trial.[10] Even if they had testified, however, their testimony would have likewise been excluded as hearsay.

Rivera cannot demonstrate prejudice because counsel explored this issue during cross-examination of medical examiner Dr. Hyma. Hyma admitted that an investigation report states the victim was returning from a church service when she was stabbed. (T. 630). Hyma testified an investigator from the medical examiner's office had obtained this information from the Miami-Dade Police Department. (T. 630); see (T. 629-31) (explaining on redirect that the investigation report is based on preliminary and nonverified information). Counsel was not deficient for failing to adduce cumulative evidence on this issue. Van Poyck, 290 F.3d at 1318. Further, additional evidence on this collateral matter would not have probably changed the outcome of trial in light of the evidence of Rivera's guilt.

---

[10] It is unclear whether these are the same officers who defense counsel decided not to call because of the danger their testimony would be more harmful than exculpatory. See, e.g., Williamson v. Moore, 221 F.3d 1177 (11th Cir. 2000) (counsel not ineffective for choosing not to call witnesses who may have provided some beneficial statements, where conflicting hurtful evidence most likely also would have been brought out).

(5) Impeachment: Canales' Guerrilla History

Rivera argues counsel failed to demonstrate Canales actually stabbed the victim by impeaching him with evidence he was a guerrilla in Nicaragua before he moved to the United States.

Counsel was not ineffective for failing to impeach Canales with any evidence he was a guerrilla in Nicaragua because this evidence is inadmissible under Florida law. As set forth in claim (2), supra, a witness can be impeached with character evidence only to the extent it reflects on the witness' reputation for truthfulness. Evidence of aggressive character is only admissible where the defendant has claimed he acted in self-defense against an allegedly aggressive victim. Dupree v. State, 615 So. 2d 713 (Fla. 1st DCA 1993); Williams v. State, 982 So. 2d 1190 (Fla. 4th DCA 2008). Such is not the case here.

(6) Impeachment: Extramarital Affair

Rivera argues counsel failed to impeach Canales' trial testimony that he was a married street preacher with no romantic interests, with his inconsistent deposition statement that he had kissed the victim's friend, Terry.

Counsel is not ineffective for failing to impeach Canales with evidence he kissed Terry because it was inconsistent with the defense's theory of the case. Counsel argued that Canales and the victim were having an affair that led to a fight and Canales accidentally stabbing the victim. Reasonable counsel could have concluded that introducing evidence that Canales had also kissed Terry would have distracted the jury and weakened the defense. See Fotopoulos, 516 F.3d at 1229 (state court's finding that counsel made a reasonable strategic decision not to impeach the state's theory of defense was not contrary to or an unreasonable

application of clearly established federal law).

(7) <u>Exculpatory Evidence</u>

Rivera argues counsel should have used various pieces of evidence to exonerate him and prove Canales lied at trial. He identifies the following issues: (a) Canales' 911 call stating Rivera was wearing a pink shirt that was never recovered; (b) Canales' blood was found on the hood of Canales' car rather than inside the car, showing no stabbing occurred inside; (c) lack of blood on the Exacto knife that was allegedly used to stab Canales; (d) Officer Garcia did not see knife wounds to Canales' hand and face; (e) none of Rivera's blood was found on any of the evidence; and (f) none of Rivera's fingerprints were found on any of the evidence.

The record refutes Rivera's contention that counsel failed to raise the foregoing issues. Counsel explored each of these points and argued that they, along with other factors, created a reasonable doubt as to Rivera's guilt. <u>See</u>, <u>e.g.</u>, (T. 295) (impeaching Officer Garcia's trial testimony that Canales had lacerations, with deposition testimony that he observed no injuries to Canales); (T. 492) (Criminalist Johnson testifying no blood was submitted that matched Rivera's DNA profile); (T. 568) (cross-examination of Technician Pratt regarding fingerprints and blood on the Exacto knife); (T. 572)(cross-examination of Technician Pratt stating there was blood found on the hood of Canales' car but not inside); (T. 574)(cross-examination of Technician Pratt that a bloody green shirt was found in the apartment but no pink shirt was found); (T. 738) (closing argument that blood was on the front of Canales' car, not inside); (T. 740) (closing argument that no prints were found on the Exacto knife). Accordingly, this claim provides no basis for relief.

(8) <u>Failure to Call Officer Molina</u>

Rivera argues counsel failed to produce Officer Luis Molina to impeach Canales with a prior statement that Canales had brought the victim from church rather than the movies.[11] This claim fails for the reasons set forth in claim (4), <u>supra</u>.

(9) <u>Burden of Proof</u>

Rivera characterizes this rambling claim as ineffective assistance of counsel due to counsel's failure to hold the State to its burden of proof. Rivera contends that counsel failed to raise inconsistencies in the evidence that would have implicated Canales and exonerated Rivera. Most of these alleged inconsistencies reiterate claims Rivera has already raised. <u>See</u> <u>supra</u> claims (2) and (7). In addition, he argues that no cutlery in the apartment matched the bloody knife, and that no photography tape in the apartment matched the red tape on the Exacto knife handle. The issues that Rivera raises are collateral matters that would not have probably affected the result of trial. <u>See</u> <u>generally</u> <u>Knowles v. Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1421-22 (March 24, 2009)(stating the Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability or realistic chance for success). Counsel was not ineffective in handling these collateral matters and Rivera cannot demonstrate he was prejudiced by any of the alleged errors.

(10) <u>Cumulative Error</u>

Rivera argues counsel's cumulative errors deprived him a fair trial. He raises the following alleged deficiencies: (a) no defense

---

[11] At trial, Rivera sought to call Officer Molina to testify that Rivera was concerned about the victim. (T. 518). Any deficiency in this regard was harmless because the parties stipulated that another officer, Julio Pino, would have testified that Rivera was upset, crying, and repeatedly asked about the victim. (T. 657-57).

witnesses besides Rivera testified; (b) counsel moved to strike but failed to have the court instruct the jury to disregard Garcia's testimony; (c) counsel made two objections to the court but only disclosed one of them for review; (d) counsel failed to object when the court assisted the State with their case by providing a court interpreter to translate the 911 call; (e) counsel failed to request a mistrial after the prosecutor disclosed someone unrelated to the case made a comment in the hallway; (f) counsel improperly attempted to impeach the key State witness; (g) counsel failed to object to the chain of custody for serological evidence that had been in the clerk's office; (h) counsel failed to have criminalist Jeffrey Johnson sworn as an expert; (i) counsel failed to diligently attempt to locate a key defense witness; (j) failing to raise the judge's bias due to coming back for a retrial; (k) failing to search for the phantom witness that allegedly fired into the air and argue that Canales was not searched at the crime scene and was actually the one who fired a gun; (l) failing to give notice of prior acts of violence; (m) failing to impeach Canales with inconsistent statements regarding Rivera's clothing; (n) failing to impeach Canales with inconsistent statements regarding a prior arrest; (o) failing to call Sergeant Julio Pino, who would have testified Canales said Rivera "slashed" the victim and never said he "stabbed" her; and (p) failing to adequately prepare for trial after the court denied his motion for continuance and ordered trial to proceed in two weeks.

Several of the alleged errors Rivera raises have already been addressed in this Report and are meritless. Non-errors do not cumulatively constitute error. See United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."). As to the other issues Rivera raises, he fails to explain how counsel's performance

fell below that expected of reasonable counsel and how the alleged deficiencies prejudiced him. These vague and conclusory allegations are insufficient to support relief. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, speculative and unsupported claims cannot support relief for ineffective assistance of counsel); Hill, 474 U.S. at 52 (general allegation of ineffective assistance of counsel is insufficient; petitioner must allege facts establishing both deficient performance and prejudice).

It is therefore recommended that the motion for stay be denied, claims one through ten of the petition for writ of habeas corpus be denied on the merits, and claims eleven through fourteen of the petition for writ of habeas corpus be dismissed as unexhausted.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

DONE AND ORDERED at Miami, Florida, this 4th day of October, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Wildo Rivera, Pro Se
     DC# M28962
     Hendry Correctional Institution
     12551 Wainwright Drive
     Immokalee, FL 34142

     Linda Katz, AAG
     Department of Legal Affairs
     444 Brickell Avenue
     Suite 650
     Miami, FL 33131